NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

Eastern District of Kentucky
**FILED**

2006-1523

JUN 14 2007

STEVEN E. BYRNE,

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

Plaintiff-Appellant,

v.

THE BLACK & DECKER CORPORATION, BLACK & DECKER, INC.,
and BLACK & DECKER (U.S.), INC.,

Defendants-Appellees.

P. Andrew Blatt, Wood, Herron & Evans, L.L.P., of Cincinnati, Ohio, argued for plaintiff-appellant.  With him on the brief was Theodore R. Remaklus.

Raymond P. Niro, Jr., Niro, Scavone, Haller & Niro, of Chicago, Illinois, argued for defendants-appellees.  With him on the brief were Dina M. Hayes and Frederick C. Laney.  Of counsel was Matthew G. McAndrews.

Appealed from:   United States District Court for the Eastern District of Kentucky

Senior Judge William O. Bertelsman

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1523

STEVEN E. BYRNE,

Plaintiff-Appellant,

v.

THE BLACK & DECKER CORPORATION, BLACK & DECKER, INC.,
and BLACK & DECKER (U.S.), INC.,

Defendants-Appellees.

———————————

DECIDED:  May 21, 2007

———————————

Before RADER, GAJARSA, Circuit Judges and O'MALLEY,[*] District Judge.

GAJARSA, Circuit Judge.

The appellant Steven E. Byrne appeals from the final decision of the United States District Court for the Eastern District of Kentucky granting summary judgment of noninfringement of U.S. Patent No. RE. 34,815 ("the '815 patent") in favor of Black & Decker Corporation, Black & Decker, Inc., and Black & Decker (U.S.), Inc.

———————————

[*]    Honorable Kathleen O'Malley, District Judge, Ohio Northern District Court, sitting by designation.

(collectively "Black & Decker").   Because Black & Decker's accused device does not fall within the scope of the patent's claims and therefore does not infringe the '815 patent, we affirm.

BACKGROUND

A.   The Technology and Patent

Mr. Byrne developed a guide and guard for a string trimmer.  The string trimmer is a landscaping device used to trim grass and weeds along the edges of sidewalks. Mr. Byrne found that his invention, the guide and guard, improved cutting uniformity, visually indicated where the string (also referred to as "flail") was cutting, stabilized the flail, and shielded the user from flying debris.  Mr. Byrne applied for and received the '815 patent covering a "Flexible Flail Trimmer with Combined Guide and Guard" for this invention.  Figures 1 and 2 of the '815 patent, which depict the guide and guard, are shown below.



Claim 24, which is representative of the claims at issue, recites:

A trimmer for edging grass along a fixed reference surface, said trimmer comprising:

. . . .

a dual function flexible flail trimmer guide and guard means mounted on said trimmer inboard of said flexible flail means for guiding said flexible flail means along said reference surface while shielding a user from debris generated by said flexible flail means,

said guide and guard means having an outer-circumferential edge defined by a circumferential lip extending radially outwardly therefrom, said circumferential lip having an outer periphery and a generally planar outboard flail stabilizing surface being disposed within a path of rotation of said flail means,

wherein said flail means extends radially outwardly from said outer periphery of said circumferential lip as said flail means rotates.

'815 patent col.11 ll.17-40 (emphasis added).

During prosecution of Mr. Byrne's patent application, the Examiner rejected claims 24-26 and 30-36 as being anticipated by U.S. Patent No. 4,091,536 issued to Bartholomew ("the Bartholomew patent"). To overcome this prior art, Mr. Byrne submitted an affidavit stating:

Bartholomew has no "lip" as I have claimed in my application. Bartholomew only has a wall 156 and a groove 158 . . . [A] "lip" at wall 156 could not function to support the rotating flail for any operative purpose since . . . it is not close enough to the wobbling outer working end. Since the bottom surface of the wall 156 is so narrow[,] if the flail rubbed on it as the flail rotated, the flail would be too soon worn at that position, separating the flail prematurely and unduly increasing the expense of the string . . .

(emphasis added). Also during prosecution, Mr. Byrne characterized a "plane" as having a "two-dimensional nature."

B.    Accused Device

Black & Decker sells string trimmers that have a U-shaped wire edge guard.  Black & Decker's Model No. ST7000 string trimmer, as depicted in the accompanying figure, is representative of the accused devices in this case.  The U-shaped wire edge guard is located at the bottom left of the shown string trimmer.



C.    Litigation History

In 2004, Mr. Byrne filed a complaint alleging that Black & Decker's string trimmers infringed fourteen claims of the '815 patent.[1] Black & Decker responded by filing a counterclaim of noninfringement.  After discovery, Black & Decker moved for summary judgment that its devices did not infringe, and the court granted Black & Decker's summary judgment.

In its opinion granting summary judgment, the district court identified one limitation, "a generally planar surface," which was common to all fourteen claims at issue in the '815 patent.[2] In construing the limitation "a generally planar surface," the district court first considered the U-shaped wire edge guide of the accused devices because it was this feature that Mr. Byrne alleged infringed his '815 patent.  Next, the court determined the ordinary and customary meaning of the word "surface" by consulting dictionary definitions.  Relying on Webster's II New College Dictionary 1109

---

[1]     Mr. Byrne also alleged in his complaint that Black & Decker's string trimmers infringed U.S. Patent No. 5,423,126, which is not at issue in this appeal.

[2]     All of the claims at issue except claim 39 have the language "a generally planar flail stabilizing surface."  Claim 39 only recites "a generally planar surface."

(Rev. 2001), the court defined "surface" as "the exterior face of an object" or "a material layer constituting such an exterior face." Additionally, the court relied on the <u>Random House College Dictionary</u> 1322 (1st ed. 1980) to further define "surface" to mean "the outer face, outside, or exterior boundary of a thing" or "part or all of the boundary of a solid." The court compared the claim term "surface" of the '815 patent as defined by the ordinary and common dictionary meaning to the U-shaped portion of the wire edge guide of the allegedly infringing devices and found that the U-shaped wire edge guide was "open, having only a void of space above, below, and within its perimeter." The district court noted that for the accused infringing devices, "the wire piece has no exterior face or layer."

Finally, the court considered the "flail stabilizing" purpose of the invention and found that the exterior boundary or solid face of the invention claimed in the '815 patent would provide an area against which the flail could touch. This area—the solid face exterior boundary—covered by the '815 patent would limit the flail's deviation from its rotational path and provide a more accurate edge cut. The court found that because the allegedly infringing wire edge guide did not have a solid surface face, it was not capable of stabilizing the flail. In contrast, the court found that the purpose of Black & Decker's allegedly infringing devices' wire edge guide was not to stabilize the flail but rather to serve as an edging guide.

After construing the claims and finding that the accused devices did not fall within the claims of the '815 patent as construed, the district court entered summary judgment in favor of Black & Decker and denied Mr. Byrne's subsequent motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).

DISCUSSION

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1) and reviews de novo a district court's grant of summary judgment. <u>Johns Hopkins Univ. v. Cellpro, Inc.</u>, 152 F.3d 1342, 1353 (Fed. Cir. 1998); <u>Conroy v. Reebok Int'l</u>, 14 F.3d 1570, 1574 (Fed. Cir. 1994). "An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996) (citations omitted). Claim construction is a matter of law that is reviewed de novo on appeal. <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1367, 1373 (Fed. Cir. 1998) (en banc). While claim construction is a question of law, infringement is a question of fact, <u>Bai v. L&L Wings, Inc.</u>, 160 F.3d 1350, 1353 (Fed. Cir. 1998), that is reviewed de novo in this appeal under the summary judgment standard.

A.      Claim Construction

When a claim is construed, claim terms should generally be given their "ordinary and customary meaning." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005). The meaning of a claim is determined by using intrinsic evidence, which includes the claims, the specification, and the prosecution history and by using extrinsic evidence, which includes dictionaries. <u>Id.</u> at 1319. However, extrinsic evidence in determining the meaning of a claim may be less reliable than intrinsic evidence: "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of intrinsic evidence." <u>Id.</u> This court has cautioned that "heavy reliance on the dictionary divorced

from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." Id. at 1321.

In the present case, the proper claim construction based on the teachings in Phillips begins with the claim language. First, the claim language itself limits and describes "surface" by including the language "generally planar." Mr. Byrne argues that a "generally planar surface" exists on the accused device because "a plurality of points on the surface of the wire edge guide lie in a plane." However, as Black & Decker points out, the claims do not cover a "surface that has two or more points in a plane," but recite only a "generally planar surface." Further, the '815 patent teaches that the purpose of the "generally planar surface" is as a flail stabilizer, and this flail stabilizing purpose is achieved when the surface itself is "generally planar." Thus, based on the language of the claims, the "surface" claimed in the '815 patent must be "generally planar" itself and not merely have points lying in a plane.

Second, the specification of the '815 patent further supports the claim langauge that the surface itself is "generally planar." In Figure 2, the "circumferential lip" (21) is depicted as a solid, two-dimensional surface. The exact lip width is uncertain, since it is determined relative to an undefined feed increment. Specifically, the written description describes the ideal lip width as being "less than the feed increment of the trimmer head so that the flail tip would wear away before that portion of the flail traveling adjacent the lip would wear through." However, the solid, two-dimensional surface of Figure 2 is sufficient to support the conclusion that the surface must be "generally planar" itself and

not merely lie in a plane. In other words, the surface must be flat and continuous and not de minimis.

Finally, the prosecution history described the circumferential lip as "two-dimensional in nature" and disclaimed a "narrow" circumferential lip in an affidavit to overcome the Bartholomew patent. Thus, the claim language "generally planar surface" of the "circumferential lip" should be construed as referring to a two-dimensional surface that is not narrow but has a width less than the feed increment of the trimmer head and is itself generally planar.

The district court erred in construing "surface" because it gave too much preliminary weight to dictionary definitions without relying on intrinsic evidence, as cautioned against in <u>Phillips.</u> The court should have applied the teachings of <u>Phillips</u> and should have considered the claims, the specification, the prosecution history, and if necessary the dictionary when it construed the claims.

Mr. Byrne complains that the district court erred by considering the accused device when construing the claims. However, there is a distinction between performing claim construction and deciding what should be construed. A court may consider the accused device to determine what part of the claim must be construed. <u>Exigent Tech. v. Atrana Solutions, Inc.,</u> 442 F.3d 1301, 1309 n.10 (Fed. Cir. 2006). But, the court cannot construe claims based on the accused device. <u>Id.</u> The district court in this case did not err when it considered the accused device to determine that it should construe the claim term "generally planar surface."

B.    Infringement Analysis

Mr. Byrne has waived his doctrine of equivalents infringement argument by failing to raise it in his opening brief, and therefore, only a literal infringement analysis is necessary here.  See Abbott Labs. v. Syntron Biosearch, Inc., 334 F.3d 1343, 1355 (Fed. Cir. 2003).  The district court erred in finding that Black & Decker's U-shaped wire edge guard had no "surface" because the U-shaped wire edge guard is a tangible object that does have a surface.  However, in view of our claim construction of "generally planar surface," the district court appropriately granted summary judgment of noninfringement because Black & Decker's device does not have the "generally planar surface" claimed by the '815 patent.  The surface of the U-shaped wire edge guide may lie in a plane, but it is not itself "generally planar" as required by the claims and the written description of the '815 patent.  Though the U-shaped wire edge guard has a surface, this surface is not "generally planar" because it lacks the two-dimensional nature described in the prosecution history.  Furthermore, because our claim construction excludes a narrow circumferential lip based on a disclaimer made during prosecution, the U-shaped wire edge guard, which is also narrow, cannot be covered by the claims.  Hence, Black & Decker's accused devices do not infringe the '815 patent.

CONCLUSION

Despite the district court's erroneous approach in construing the claims of the '815 patent, Black & Decker is nonetheless entitled to summary judgment of noninfringement because its devices do not include a "generally planar surface."  We therefore affirm the judgment of the district court.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: _____ Date: 6/11/07